IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND, INDIANA

| | |
|---|---|
| MICHAEL LISNEK, ) | |
| 31417 PROPERTIES LLC, and ) | |
| and PAXSON PROPERTIES LLP, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | No.2:20CV20-PPS/JPK |
| ) | |
| LAW OFFICE OF MARCO A. MOLINA ) | |
| and MARCO A. MOLINA, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Plaintiffs Michael Lisnek, 31417 Properties LLC, and Paxson Properties LLP have moved for default judgment against defendant Marco A. Molina under Fed.R.Civ.P. 55(b)(2). [DE 39.]

### Introduction

This lawsuit arises from an attorney-client relationship that existed between the Plaintiffs and Marco Molina, whom Plaintiffs retained to assist them in securing tax deeds for certain real estate properties the Plaintiffs successfully bid on during the March 2017 Lake County, Indiana, tax sale auctions. Molina's conduct, as described in the Declaration of Plaintiff Michael Lisnek, reflects a continuous failure to comply with statutory deadlines, a failure to respond to the Plaintiffs' legitimate inquiries and concerns, and a failure to properly perform the services for which Molina was retained and paid. Molina's conduct also included his unauthorized and secretive sale of a certain property for which Plaintiff 31417 Properties was awarded a tax deed, and his apparent retention of proceeds from that sale. The Plaintiffs sustained significant monetary damages due to Molina's professional misconduct.

Plaintiffs filed their Complaint in this case on January 15, 2020. [DE 1]. The Complaint was for monetary damages arising from Defendants' legal malpractice. On April 15, 2020, the Clerk entered default against the Defendants for their failure to plead or otherwise defend this action. [DE 8]. On September 14, 2020, the Plaintiffs filed their First Amended Complaint adding claims for Breach of Fiduciary Duty, Constructive Fraud, Attorney Deceit, and Conversion. [DE 16]. On January 7, 2021, the Clerk again entered default against the Defendants for their failure to plead or otherwise defend against the First Amended Complaint. [DE 32].

In my January 7, 2021 Order, I directed the Plaintiffs to address why the facts deemed admitted by the defaults entitle the Plaintiffs to the relief requested. [DE 31]. The motion for default judgment is supported by the Declaration of Michael Lisnek which details the relevant facts surrounding the relationship between the Plaintiffs and Molina, and describes the negligence and misconduct committed by Molina. I also requested that the Plaintiffs explain with particularity on which counts of the First Amended Complaint default judgment is sought. [DE 31]. The motion explains that only Plaintiff 31417 Properties, LLC is seeking default judgment, and on the basis of Count I (Professional Negligence) and Count II (Breach of Fiduciary Duty). [DE 39 at 2.]

I also directed that the Plaintiffs specifically address why defendant Law Offices of Marco A. Molina is a suable entity against whom a money judgment can be obtained. [DE 31]. In their motion, the Plaintiffs concede that the Law Offices of Marco A. Molina is not a legal entity but, rather, is merely a "d/b/a" of Defendant Marco A. Molina. [DE 39 at 2-3.] As a result, the motion seeks judgment against Marco A. Molina only, and the Plaintiffs request a dismissal without prejudice against Law Offices of Marco A. Molina. [*Id.* at 3.]

Finally, I requested that legal authority and support for any punitive damages sought be carefully articulated and supported. [DE 31]. As further explained below, the Plaintiffs have

satisfied this request through their motion for default judgment, the supporting declarations, and numerous exhibits.

## Statement of Facts

The facts well-pleaded by a plaintiff pertaining to liability are deemed admitted by the defendant's default. *Pope v. United States*, 323 U.S. 1 (1944); *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 72 F.2d 1319, 1323 (7th Cir. 1983). The First Amended Complaint [DE 16] and the Declaration of Plaintiff Michael Lisnek [DE 41] provide a detailed recitation of the Plaintiffs' engagement of Molina, the communications between the parties, Molina's actions and inactions with respect to his representation, and the damages the Plaintiffs sustained, sufficient to support a finding in favor of the Plaintiff on the judgment requested. Here I reiterate the principal material facts on which default judgment is based.

The Plaintiffs are real estate investors. In March 2017, the Plaintiffs participated in the Lake County, Indiana, Commissioner's Tax Certificate Sale, which is a real property tax sale auction. (Lisnek Dec. ¶ 5). Through that auction, buyers can purchase tax liens on real properties that are delinquent in paying property taxes. A successful bid results in the buyer receiving a Tax Certificate. Before the buyer can obtain a deed to the property, it must give the property owner an opportunity to "redeem" the property by paying an amount exceeding the bid, interest, taxes, fees, and costs incurred by the buyer. (*Id.*) The buyer is required to serve notice on the property owner advising the owner of deadline by which the property can be redeemed. (*Id.*) If the property is not redeemed by the deadline, the buyer can petition the court for a Tax Deed by showing compliance with the notice requirements and payment of any outstanding property taxes. (*Id.*)

On or around March 15-16, 2017, Plaintiff 31417 Properties successfully bid on 62 properties during the tax sale auction. (Lisnek Dec. ¶ 13). To ensure their compliance with the

3

legal requirements for securing the Tax Deeds to properties they bid on, Lisnek contacted Molina, an attorney licensed in Indiana. (*Id*. ¶¶ 8-10). Molina assured Lisnek that he was experienced in this area and, for a fee of $40,000, was willing and able to handle the matter on the Plaintiffs' behalf. (*Id.* ¶¶ 8-9, 17) Lisnek, for himself and the other Plaintiffs, retained Molina shortly after the tax sale and paid him an initial fee of $6,000 on or around April 5, 2017. (*Id*. ¶¶ 17-18). Molina did not present the Plaintiffs with a written engagement agreement. (*Id.*) However, Molina agreed to send out the required notices to the property owners, secure the tax bills on the properties so they could be paid by the Plaintiffs, petition the court on the properties not redeemed so Tax Deeds could be obtained, advise the Plaintiffs on any other actions needed to secure the deeds, and perform any further work needed to complete these tasks. (*Id.* ¶ 11).

As it turned out, 28 of the property owners redeemed right away. (Lisnek Dec. ¶ 19). Thus, Molina was only tasked with attempting to secure Tax Deeds on the remaining 34 properties. (*Id*). The redemption period on those properties was 120 days from the auction. (*Id*. ¶ 20). Therefore, notices were required to be sent to the property owners advising them of the expiration of the redemption period, in this case, July 14, 2017. (*Id*. ¶ 21).

Molina sent out the notices, but he included the wrong date for redemption. (*Id*. ¶ 22-23). Molina admitted his error to Lisnek verbally and through a text message stating: "As I've admitted many times to you and apologized repeatedly, yet the date was a freak error that happened. I recognize that is on me and I will do everything I can to remedy that." (*Id.*) Because of the defective notices, the redemption period was extended to January 22, 2018. (*Id*. ¶ 24-26). This gave the delinquent property owners an additional six months to effectuate their redemptions.

In a November 27, 2017, text message, Molina advised Lisnek that he would once again issue the requisite notices, that he would go to court on March 22, 2018 to secure orders for the

4

Tax Deeds, and that he would then take the orders to the Lake County Auditor who would prepare the Tax Deeds for recording. (*Id.* ¶ 26).  Additionally, despite Molina's blatant and costly error, he demanded that the Plaintiffs pay him $10,000 by November 30, 2017, an additional $10,000 by January 12, 2018, and "the balance"—presumably $14,000—by March 30, 2018. (*Id*. ¶ 28).

Molina ultimately agreed to accept $4,000 at that time, which Lisnek paid. (*Id.* ¶ 32-33). However, on January 15, 2018, Molina demanded an additional $10,000 payment, threatening to withdraw from the matter and not send out the required notices if the money was not received. (*Id*. ¶ 34).  Concerned about losing the properties, Lisnek paid the $10,000 in January 2018. (*Id.* ¶ 35-36).

As described in Lisnek's Declaration, he spent the next year chasing Molina through phone calls, emails, and text messages, trying to get answers regarding the status of Molina's efforts in securing the Tax Deeds. (*See Id.* ¶¶ 37-68).  Molina responded by either ignoring Lisnek's communications, providing excuses for his delays, or simply telling him lies.

For instance, Molina's timeline setting forth a March 22, 2018 date for securing the court orders turned out to be false.  By June 27, 2018, Molina only produced orders for 16 of the 34 outstanding properties. (*Id*. ¶ 53).  Lisnek finally received the Tax Deeds on those 16 properties on August 1, 2018. (*Id.* ¶ 54).  However, the 18 other properties remained unaccounted for.

Lisnek sent messages to Molina throughout August, September, and October 2018, inquiring if he had or would obtain court orders on the remaining 18 properties. (*Id.* ¶ 56).  Molina was unresponsive. (*Id.*)  On October 30, 2018, Lisnek himself contacted the Lake County tax sale department to inquire when he had to pay the taxes on the unredeemed properties but was told he could not get that information without having the court orders. (*Id*. ¶ 58).  So Lisnek resumed

trying to contact Molina to get information regarding the status of the court orders and tax bills. Molina continued to ignore him. (*Id.* ¶ 59).

Finally, on November 16, 2018, Molina texted Lisnek offering to meet the following week. (Lisnek Dec. ¶ 60). When they met, Molina told Lisnek that on November 21, 2018, he would file petitions with the court to secure orders for the Tax Deeds on the remaining properties. (*Id*. ¶ 61). On November 23, 2018, Molina advised Lisnek that he filed the petitions, that he would be appearing in court to present the petitions on December 6, 2018, and that there was nothing to worry about. (*Id.* ¶ 61). Lisnek followed up multiple times to determine what happened in court. Finally, on December 14, 2018, Molina advised that there were too many cases on the December 6 call, and that he had a new date to present the petitions on January 24, 2019. He told Lisnek "don't be nervous" and assured him "everything is fine." (*Id.* ¶ 62-63).

On January 25, 2019, Lisnek followed up with Molina via text to see what happened in court. Molina said he would call Lisnek later, yet failed to do so. (Lisnek Dec. ¶ 64). Three days later, Lisnek sent Molina another text asking if he secured the court orders and tax bills, to which Moline responded "Yes, it's all in process." (*Id*. ¶ 65). Lisnek kept pursuing Molina for answers. On February 4, 2019, Molina responded stating he would get back to Lisnek that day. He never did. (*Id.* ¶ 66). Finally, after several more days of Lisnek chasing Molina, Molina agreed to meet at 11:00 a.m. on February 19, 2019. However, on the morning of February 19, Molina asked to reschedule for February 21, 2019. Then on February 21, 2019, Molina advised Lisnek he was in court. So Lisnek asked if they could meet on February 22, 2019, as Lisnek still wanted to learn what happened during the January 24 court date. Molina never responded. (*Id.* ¶ 68).

By February 28, 2019, Lisnek had come to learn that Molina never filed the petitions as he had claimed. (*Id.* ¶ 69). Lisnek texted Molina confronting him with this information. Molina never responded and never produced evidence that they were filed. (*Id.*)

On March 6, 2019, Lisnek requested that Molina forward his complete file so he could try to obtain the tax deeds through other means. That was the last date of the Plaintiffs' engagement of Molina. Molina never provided Lisnek with his file materials. (*Id.* ¶ 70-71).

By the end of Molina's engagement, he had only secured Tax Deeds for 16 of the 34 properties. To Lisnek's knowledge, Molina never filed the petitions or obtained the necessary orders from the court for the remaining 18 properties. (Lisnek Dec. ¶¶ 72-73).

While working on the instant lawsuit in July 2020, Lisnek discovered something previously unknown regarding one of the properties 31417 Properties had successfully bid on, namely, the property at 3881-83 Broadway in Gary, Indiana (the "Broadway Property"). (Lisnek Dec. ¶¶ 75-76). The Broadway Property was one that Lisnek always believed was redeemed by the owner, since that is what Molina had told him. (*Id.* ¶ 77). However, this was not the case.

The Broadway Property was one of the properties for which the redemption period was extended to January 22, 2018. (Gassman Dec. ¶ 4). On March 13, 2018, Molina filed a Petition for Issuance of Deed on behalf of 31417 Properties with respect to the Broadway Property. (*Id.* ¶ 5). However, unbeknownst to Lisnek, on April 26, 2018, the respondent to that petition asserted an objection and the matter was scheduled for a June 7, 2018, pre-trial conference. (*Id.* ¶ 6).

Based on documents received in response to a subpoena issued in this case, Molina engaged in the following activities without advising Lisnek and without his authority. First, on June 7, 2018, Molina entered into an "Agreement to Resolve Tax Deed Objection and Transfer of Property" with the owner of the Broadway Property, which was a Land Trust #6255. (See Gassman

7

Dec. Ex. 1 and ¶ 3). Through the Agreement, Molina agreed to sign a deed and sales disclosure form transferring the Broadway Property from 31417 Properties to Trust #6255. Trust #6255 would then withdraw its objection to the petition, permitting Molina to obtain the Tax Deed. After Molina recorded the Tax Deed, the Trust would pay to Molina $750 plus the property taxes paid and any additional costs incurred. Then, the Trust would record the first deed transferring the property from 31417 Properties LLC to Trust #6255. (*Id.*) Molina signed the "Agreement to Resolve Tax Deed Objection and Transfer of Property" as purported agent of 31417 Properties LLC, though he had no authority to do so. (Lisnek Dec. ¶ 80).

On August 14, 2018, and in furtherance of the Agreement, Molina signed a Quitclaim Deed transferring the Broadway Property from 31417 Properties to Trust #6255. He also signed a Sales Disclosure Form for the conveyance on the same date. Both were signed purportedly as the agent of 31417 Properties, though Molina was never authorized to do so. (Gassman Dec. Ex. 1 and ¶ 3; Lisnek Dec. ¶¶ 83-4). Lisnek was unaware of this transaction. (*Id.*)

On May 3, 2019, Molina secured a Tax Deed for the Broadway Property, which named 31417 Properties as the holder of the ownership interest. (Gassman Dec. Ex. 1 and ¶ 3). Molina did this even though he no longer represented the Plaintiffs. He never advised Lisnek of this action and was never given authority to act in this regard. (Lisnek Dec. ¶ 90). The Quitclaim Deed Molina signed on August 14, 2018, was then recorded on May 28, 2019, effectively transferring the Broadway Property from 31417 Properties to Trust #6255. (Gassman Dec. Ex. 1 and ¶ 3). Lisnek did not authorize this transfer.

Due to Molina's negligence, at least three (3) properties were redeemed by their owners after the original July 14, 2017, deadline. As a result, 31417 Properties lost its right to secure the

8

Tax Deeds it otherwise would have obtained. This caused 31417 Properties to suffer substantial losses.

Additionally, under the law, 31417 Properties had three (3) months from the expiration of the redemption period to petition the court for Tax Deeds. (Lisnek Dec. ¶ 100). Due to Molina's negligence, he failed to petition the court on at least four (4) properties. (*Id.* ¶ 101). This caused 31417 Properties to lose its right to obtain the Tax Deeds and to suffer substantial losses.

Moreover, due to Molina's unauthorized transfer of the Tax Deed on the Broadway Property, 31417 Properties lost its interest in that property which it otherwise would have retained. Moreover, Molina failed to give the Plaintiffs the $750 he received from Trust #6255 in exchange for that transaction. (Lisnek Dec. ¶110).

## Discussion

### Count I – Professional Negligence

To prove a legal malpractice claim, a plaintiff must show: "(1) employment of an attorney, which creates a duty to the client; (2) failure of the attorney to exercise ordinary skill and knowledge (breach of duty); and (3) that such negligence was the proximate cause of (4) damage to the plaintiff." *Ferguson v. O'Bryan*, 996 N.E.2d 428, 432 (Ind. Ct. App. 2013). In this case, 31417 Properties is entitled to a default judgment against Molina on its professional negligence claim because it satisfies each of these elements.

#### 1.  *Employment of Molina*

The evidence firmly establishes that the Plaintiffs, including 31417 Properties, retained Molina to serve as their attorney. According to Lisnek's Declaration, he hired Molina to perform work for himself and his companies with respect to obtaining the Tax Deeds for the properties 31417 Properties successfully bid on. (Lisnek Dec. ¶¶ 9, 11, 17). He paid Molina pursuant to the

9

engagement. (*Id.* ¶ 18). And, as described throughout Lisnek's Declaration, Molina performed work on the Plaintiffs' behalf.

### 2. *Molina's Breach of Duty*

An attorney owes his client "a duty to exercise ordinary skill and knowledge in performing professional functions." *Ferguson,* 996 N.E.2d at 432. Indiana courts usually require an expert witness to testify regarding a lawyer's standard of care and breach of this duty. *Storey v. Leonas*, 904 N.E.2d 229, 238 (Ind. Ct. App. 2009). However, expert testimony is not required where the attorney's negligence "is within the common knowledge of the community as a whole or when an attorney's negligence is so grossly apparent that a layperson would have no difficulty in appraising it." *Id.*; *see also McGrath v. Everest Nat'l Ins. Co.*, 668 F. Supp. 2d 1085, 1116 (N.D. Ind. 2010)("No reasonable person would dispute that [a lawyer's] failure to appear as a representative for its client and failure to file an answer to a complaint was malpractice").

Here, an expert witness is not required to establish Molina's negligence. First, Molina's errors are evident to a layperson. As an initial step in securing the Tax Deeds, Molina was tasked with notifying each of the property owners of the applicable redemption deadline. However, while Molina undertook to perform this work, he failed to include the correct redemption deadline in the notices he sent to the property owners. As a result, the redemption period was extended by more than six months, to January 22, 2018. It does not take an expert to state that a reasonably competent attorney would have included the correct date, or that the inclusion of the wrong date was an error. Molina clearly breached his duty in this regard.

Nor does it take an expert to establish that Molina was negligent in failing to file verified petitions for Tax Deeds within three months of the expiration of the redemption period. The law

10

on this issue is clear and is set forth in Indiana Code § 6-1.1-25-4.6. Molina's failure to comply with the statutory requirement was a clear error, and was grossly apparent even to a layperson.

Additionally, Molina admitted his own negligence. He wrote to Lisnek that "the date was a freak error that happened," that "this is on me," and that "I will do everything I can to remedy that." (Lisnek Dec. ¶ 23). Not only did he admit his error, but he recognized that his error was one that required fixing. There can be no dispute that Molina failed to exercise ordinary skill and knowledge, thereby breaching his professional duty to his clients, when he included the incorrect date in the notices and failed to timely petition the court for Tax Deeds.

### 3. *Molina's Negligence Proximately Caused the Plaintiffs' Damages.*

The redemption period for the properties the Plaintiffs bid on was supposed to expire on July 14, 2017. (Lisnek Dec. ¶ 21). However, because Molina included the wrong redemption deadline within his notices, that date had to be extended to January 22, 2018. (*Id.* at ¶ 26). As such, certain property owners who had not redeemed by July 14, 2017, were given a new opportunity to redeem prior to the January 22, 2018, deadline. These properties include:

- a) PIN 45-07-02-482-032.000-004 (6300 W. 9th Street, Gary, IN) Redeemed on January 19, 2018;
- b) PIN 45-08-10-482-015.000-004 (2014 Martin Luther King Dr., Gary, IN) Redeemed on January 19, 2018; and
- c) PIN 45-08-27-132-010.000-004 (3841 Delaware, Gary, IN) Redeemed on November 21, 2017.

(Lisnek Dec. ¶ 95).

To establish causation and damages in a legal malpractice case, a client must show that the outcome of his underlying matter would have been more favorable but for his attorney's negligence. *Gilman v. Hohman*, 725 N.E.2d 425, 428-29 (Ind. Ct. App. 2000). In the instant case, each of the above-referenced properties was redeemed *after* the expiration of the original redemption deadline. The redemption deadline was only extended due to Molina's negligent

11

failure to put the proper date in the notices. Thus, but for Molina's negligence, the above properties would not have been timely redeemed and Plaintiff 31417 Properties would have secured the Tax Deeds. However, as a result of Molina's negligence, the Plaintiff lost the right to obtain those Tax Deeds that it otherwise would have secured.

The Plaintiff also lost the right to obtain the Tax Deeds on the four properties for which Molina failed to timely file verified petitions with the court. These properties are:

a) PIN 45-07-02-480-022.000-004 (810 Hobart St., Gary, IN);
b) PIN 45-08-16-151-021.000-004 (2316 Johnson St., Gary, IN);
c) PIN 45-08-15-202-023.000-004 (2136 Vermont St., Gary, IN);
d) PIN 45-08-15-253-009.000-004 (2345 Vermont St., Gary, IN).

(Lisnek Dec. ¶ 101). There is no evidence that these properties were ever redeemed. Thus, but for Molina's outright failure to file timely verified petitions for Tax Deeds, the Plaintiffs would have been able to obtain the Tax Deeds and title to these properties.

### 4. *Computation of Damages on Count I.*

In tort claims, damages directly traceable to the wrong are recoverable. *Columbus Med. Servs. Org., LLC v. Liberty Healthcare Corp.*, 911 N.E.2d 85, 96 (Ind. Ct. App. 2009). While the record must contain an adequate basis for the computation of damages, the evidence need not show the amount of damages with absolute certainty or precision. *Thorne v. Member Select Insurance Co.*, No. 2:09-CV-87-JEM, 2017 U.S. Dist. LEXIS 8767, at *6 (N.D. Ind. Jan. 23, 2017). Rather, the amount of damages must be shown to a reasonable amount of certainty. *Trustees of the Teamsters Union Local No. 142 Pension Trust Fund v. Actin, Inc.*, No. 2:07-CV-289-TS, 2010 U.S. Dist. LEXIS 103434, at *6 (N.D. Ind. Sep. 28, 2010). All doubts or uncertainties as to the proof of the measure of damages must be resolved against the tortfeasor. *Columbus Med. Servs. Org.*, 911 N.E.2d at 96.

In this case, Plaintiff 31417 Properties' damages attributable to Molina's professional negligence include the loss of the aforementioned Tax Deeds. To compute the damages, Lisnek obtained valuations and comparable listings for the subject properties from an Indiana real estate broker. These estimated valuations and comparable listings showed the properties to have market values as follows:

a) PIN 45-07-02-482-032.000-004 (6300 W. 9th Street, Gary, IN) Average Estimated Value of $44,000;
b) PIN 45-08-10-482-015.000-004 (2014 Martin Luther King Dr., Gary, IN) Estimated Value of $45,000;
c) PIN 45-08-27-132-010.000-004 (3841 Delaware, Gary, IN) Average Estimated Value of $52,000;
d) PIN 45-07-02-480-022.000-004 (810 Hobart St., Gary, IN) Average Estimated Value of $50,000;
e) PIN 45-08-16-151-021.000-004 (2316 Johnson St., Gary, IN) Estimated Value of $8,000;
f) PIN 45-08-15-202-023.000-004 (2136 Vermont St., Gary, IN) Average Estimated Value of $54,000;
g) PIN 45-08-15-253-009.000-004 (2345 Vermont St., Gary, IN) Average Estimated Value of $37,000.

(Lisnek Dec. ¶ 96 & 102).

The total value of these properties lost due to Molina's negligence is $290,000. According to Lisnek's Declaration, he has spent on average $15,000 to rehab the properties for which he secured Tax Deeds. (*Id.* at ¶ 98). Thus, the net value of the properties lost due to Molina's professional negligence is **$200,000.**[1]

## Count II – Breach of Fiduciary Duty

The relationship between an attorney and client is of a fiduciary nature. *Sanders v. Townsend*, 582 N.E.2d 355, 358 (Ind. 1991). "No rule of law is more firmly established than that—'A fiduciary relationship exists between attorney and client, and the confidence which the

---

[1] $290,000 less $90,000 renovation costs = $200,000. This assumes the renovation of 6 out of the 7 properties. The $8,000 property is vacant land and would not have been renovated.

13

relationship begets between the parties makes it necessary for the attorney to act in utmost good faith.'" *Id.*, *citing American-Canadian Oil & Drilling Corp. v. Aldridge & Stroud, Inc.*, 373 S.W.2d 148, 150 (1963) (*quoting Norfleet v. Stewart*, 20 S.W.2d 868 (1929)). An attorney's fiduciary duties are critical to the effective representation of his client and fundamental to the workings of our legal system. *Sanders*, 582 N.E.2d at 358. "They cannot be breached without consequences to the attorney." *Id.*

A breach of fiduciary duty claim is "entirely different" from a legal malpractice claim. *Price Waicukauski & Riley, LLC v. Murray*, 47 F. Supp. 3d 810, 825 (S.D. Ind. 2014). "To prove a breach of fiduciary duty claim, a plaintiff must establish: (1) the existence of a fiduciary relationship; (2) a breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary." *Hill Fulwider P.C. v. Swindell-Dressler Int'l Co.*, No. 1:15-cv-01554-JMS-TAB, 2017 U.S. Dist. LEXIS 14472, at *7 (S.D. Ind. Feb. 2, 2017).

### 1. *Duty*

With regard to the first element, there can be no dispute that Molina—as the attorney—owed a fiduciary duty to the Plaintiffs—his clients. As such, Molina was bound to "faithfully, honestly, and consistently represent the interest and protect the rights of his client[s]…, discharge his duties to his client[s] with the strictest fidelity, to observe the highest and utmost good faith, and to inform his client[s] promptly of any known information important to [them]." *Bell v. Clark*, 653 N.E.2d 483, 489-90 (Ind. App. Ct. 1995)(*quoting Blasche v. Himelick*, 210 N.E.2d 378, 381 (1965)).

### 2. *Breach of Fiduciary Duty*

Molina breached the fiduciary duty owed to the Plaintiffs when he had secret dealings with the owners of the Broadway Property through which he acted to the detriment of the Plaintiffs

without their authority. Molina signed the Agreement with Trust #6255 without obtaining permission from Lisnek. He lied to Lisnek, advising him that the Broadway Property had been redeemed, when that never occurred. He obtained the Tax Deed for the Broadway Property on 31417 Properties' behalf *after* Lisnek had terminated the representation. He failed to advise Lisnek that 31417 Properties had in fact been awarded the Tax Deed. And he executed a Quit Claim Deed, without Lisnek's knowledge or authorization, which transferred title of the Broadway Property to the prior owner. Additionally, Molina apparently received $750 from the property owner which he never provided to the Plaintiffs. Molina's surreptitious and unauthorized behavior is a clear breach of his fiduciary duty to his clients, the Plaintiffs.

### 3. *Proximate Cause; Computation of Damages on Count II*

Here, the Plaintiff, 31417 Properties, suffered harm as a result of Molina's breach of fiduciary duty which is different from and in addition to its damages on the professional malpractice count. Plaintiff 31417 Properties lost the Broadway Property as a direct and proximate result of Molina's unauthorized agreement with Trust #6255 and unauthorized execution of the Quit Claim Deed. Based on the valuation performed by the Plaintiffs' broker, the Broadway Property is worth $5,833. (Lisnek Dec. ¶ 109).

In addition to the loss of the value of the real property, Plaintiffs are entitled to a reimbursement of the fees they paid Molina. A breach of fiduciary duty claim is an equitable claim for which a defendant can be required to disgorge all compensation received during the time it was breaching the fiduciary duty, even if the plaintiff cannot demonstrate a financial loss. *Hill Fulwider P.C. v. Swindell-Dressler International Co.*, 2017 U.S. Dist. LEXIS 14472, at *8; *see also Prime Mortgage USA, Inc. v. Nichols*, 885 N.E.2d 628, 659 (Ind. Ct. App. 2008) ("[W]e have previously held that one breaching a fiduciary duty may be required to disgorge all compensation received

during the breach.") *(citing Wenzel v. Hopper & Galliher*, 830 N.E.2d 996, 1001 (Ind. Ct. App. 2005)). In this case, as set forth in the Lisnek Declaration, Molina was paid $20,000 in attorneys' fees. As a result of Molina's breach of fiduciary duty, these fees should be disgorged and returned to 31417 Properties.

## **Punitive Damages**

An award of punitive damages may be sustained where an attorney commits legal malpractice and/or breaches the fiduciary duty owed to his client. *Bell v. Clark*, 653 N.E.2d at 489. "[P]unitive damages may be awarded upon clear and convincing evidence that the defendant acted with malice, fraud, gross negligence or oppressiveness which was not the result of a mistake of fact or law, honest error of judgment, overzealousness, mere negligence, or other human failing." *Id*. at 490. Punitive damages are imposed to deter the defendant and others from engaging in like conduct in the future. *Id.* "All awards of punitive damages must be supported by a finding that the public interest will be served by punishing the wrongdoer." *Id.* "Punitive damages are especially appropriate if the wrongdoer occupies a position of trust with members of the general public as well as with the victim." *Id.* at 491. Under Indiana Code § 34-51-3-4, an award of punitive damages may not be more than the greater of: 1) three times the amount of compensatory damages awarded in the action; or 2) fifty thousand dollars ($50,000).

In this case, Molina's act of lying about filing the petitions while stringing Lisnek along, lying about the status of the Broadway Property, secretly executing legal documents without Lisnek's authority, and transferring Plaintiff's deeded property to the prior owner without advising Lisnek, was all done with malice and the intent to deceive. There is no other explanation. At minimum, Molina's conduct constitutes gross negligence. Molina's actions cannot be characterized as a simple mistake of fact or error of judgment, as Molina knew what he was doing

and continually lied about it. His acts were deceptive, dishonest, and a clear abuse of the position he held in relation to the Plaintiffs, which directly led to Plaintiffs' harm.

The evidence clearly supports an award of punitive damages. The public's interest will be served through an award of punitive damages by discouraging Molina and other attorneys from engaging in this type of conduct in the future. Lying to a client about the status of petitions, and transferring a client's property without his knowledge or authorization, cannot be tolerated and should be deterred. Plaintiffs seek 1.5 times the compensatory damages of $205,833, which includes the loss of the properties redeemed late, the loss of the properties for which petitions were not filed, and the loss of the Broadway Property. The court is persuaded that punitive damages equal in amount to the total compensatory damages (rather than 150% of the compensatory damages) is adequate, without being excessive, to meet the objectives of punitive damages. Based on the egregious nature of Molina's conduct, and in order to deter similar future conduct, Plaintiff 31417 Properties will be awarded punitive damages in an amount equal to the compensatory damages, or $205,833.

## **Prejudgment Interest**

In the final sentence of the motion for default judgment, the Plaintiffs request an award of prejudgment interest. [DE 39 at 18.] Plaintiffs offer no analysis or justification for such an award. The single sentence lacks citation to applicable Indiana statutes or any relevant caselaw, and omits any discussion of applicable standards or the basis for Plaintiffs' method for calculating prejudgment interest (such as the time of accrual pursuant to Indiana Code §34-51-4-8). Due to the inadequacy of the Plaintiffs' presentation of the issue, I am not persuaded to award prejudgment interest.

**Conclusion**

Based on allegation of the First Amended Complaint, and the Declarations and Exhibits presented in support of the motion for default judgment, along with the arguments set forth therein, default judgment will be awarded to Plaintiff 31417 Properties, LLC and against Defendant, Marco A. Molina as set forth below.

ACCORDINGLY:

Plaintiffs' Motion for Default Judgment [DE 39] is GRANTED, and default judgment shall be entered in favor of Plaintiff 31417 Properties, LLC and against defendant Marco A. Molina in the total amount of $431,666, itemized as follows:

1) Compensatory damages on Count I in the amount of $200,000;

2) Compensatory damages on Count II in the amount of $5,833;

3) Disgorgement of attorneys' fees paid totaling $20,000, on Count II; and

4) Punitive damages totaling $205,833.

All claims asserted by plaintiffs Michael Lisnek or Paxson Properties LLP against defendant Marco A. Molina shall be DISMISSED WITHOUT PREJUDICE.

All claims asserted by plaintiffs Michael Lisnek, 31417 Properties LLC, or Paxson Properties LLP against defendant Law Office of Marco A. Molina shall be DISMISSED WITHOUT PREJUDICE.

Upon the Clerk's entry of judgment in conformity with this opinion, the matter will be CLOSED.

Dated this 9th day of June, 2021.

       /s/ Philip P. Simon      .
UNITED STATES DISTRICT JUDGE